ARNOLD SCOTT *vs.* DEDHAM WATER COMPANY.

Suffolk.   March 7, 1916. — June 20, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Contract,* Construction.   *Water Company.*

A contract made by a water company to furnish water for use on a certain property at the same rate charged to the former owner of the property, which was a fixed sum for the year, and "that the rate would continue the same for the pres-

ent," means that the rate charged the former owner will be continued until changed by the company, and, after a notification from the company that the fixed rate thereafter will be treated as a minimum charge and that all water used in excess of a certain number of gallons will be charged for at meter rates, the water taker must pay according to the changed rate, and, if he refuses to do so, the company, under a right reserved by the regulations printed on its bills, may shut off the water for non-payment of water rates.

BRALEY, J.   The plaintiff owns property for which the defendant, a public service corporation, furnished water, but a dispute having arisen over the rates, he was notified that unless payment was made of the amount claimed by the company the service would be discontinued.   It is alleged, in the bill thereupon brought for permanent injunctive relief, that, if this is done, the plaintiff's estate will be greatly damaged and the health of members of his family impaired.   The allegations of the first paragraph of the bill, admitted by the answer, are that when the plaintiff purchased the premises the company had been furnishing water to the former owner "at a flat rate of $100 per year," and the second paragraph alleges that, at an interview between the plaintiff and the defendant's president, the president "promised that the rate would not be changed" and that it would continue at that rate yearly "payable in advance."   The answer, while admitting the interview, avers that the president only promised that the rate would not be changed for the succeeding year.

The rights of the parties depend upon the terms of the parol contract into which they entered.   *Merrimack River Savings Bank* v. *Lowell,* 152 Mass. 556.   *Turner* v. *Revere Water Co.* 171 Mass. 329. *Souther* v. *Gloucester,* 187 Mass. 552.   It is to be ascertained from the evidence of the plaintiff and the president, who were the only witnesses present at the interview, with the burden of proof on the plaintiff to sustain the agreement described in the bill.   While the evidence taken by a commissioner is reported, the credibility of the witnesses was for the presiding judge, whose findings of fact will not be reversed unless shown to be plainly wrong.   If on the one hand the plaintiff's version is accepted, the defendant agreed to furnish water indefinitely at a flat rate, for the record fails to show any limitation on the authority of the president to bind the company.   If on the other hand the president's statement that the rate was only "for the present" is correct, the rate continued only so long as either party chose to be bound.   We have

read the evidence. It is, as we have said, contradictory, and the finding that the "plaintiff asked the president if the rate which had been charged the prior owner of the premises $100 a year was to continue," to which the president replied, "I think we ought to get the same rate," and the "plaintiff said that that would be satisfactory to him, and thereupon the president said that the rate would continue the same for the present" must stand. The contract accordingly should be construed to mean, that the rate charged the former owner would be continued until changed by the company. The plaintiff paid for one year, when the defendant by the terms of the bill rendered for the succeeding year notified him that the flat rate was to be considered only as a minimum charge for the number of gallons therein specified and that thereafter all water used in excess would be charged for at "meter rates." The plaintiff did not deny receiving this and subsequent bills containing similar recitals. And, although unable to testify that he received the notice, yet the judge found on all the evidence, that, when the rates were changed and the service by meter adopted, the notice announcing the change was received by him in common with all users of water. If, after being informed that in the future the company would require payment at "meter rates" for water used in excess of the quantity supplied for the minimum price, he continued to receive and use a greater quantity, he impliedly agreed to pay for it at the established price. *Dickey* v. *Putnam Free School,* 197 Mass. 468, 473, and cases cited. The plaintiff having refused to permit the installation of a meter on his own premises, meters were placed in the adjoining highway, and it was admitted that water was properly measured, and the bills presented to the plaintiff corresponded with the amount registered.

But, the plaintiff having refused to make payment, the eighth clause of the regulations, also printed on the bills he received, that "The company reserves the right to shut off the water in all cases for nonpayment of water rates . . .," became applicable, and properly could be enforced by the defendant by discontinuance of the service. *Turner* v. *Revere Water Co.* 171 Mass. 329, 336, and cases cited.

The judge's * computation of the amount due is not questioned,

* *Jenney,* J. He found that at the time of the filing of the bill the plaintiff owed the defendant for water furnished by it to him the sum of $412.69.

and, as he rightly held the plaintiff liable therefor, the interlocutory decree that unless this sum was paid the bill should be dismissed is affirmed. And, the plaintiff not having complied with this decree, the final decree dismissing the bill, from which he also appealed, should be affirmed.

*Ordered accordingly.*

*W. C. Cogswell,* for the plaintiff.
*W. H. Wade,* for the defendant.